UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| **Nick Kostecki Excavating, Inc.,** | ) | CASE NO. 1:23 CV 2370 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| **Integrated Machinery, Inc.,** | ) | |
| | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon defendant Integrated Machinery Inc.'s Motion to Dismiss (Doc. 9). This is a fraud and breach of contract case. For the reasons that follow, defendant's Motion to Dismiss is DENIED.

**FACTS**

Plaintiff Nick Kostecki Excavating, Inc. ("plaintiff") brings this lawsuit against defendant Integrated Machinery, Inc. ("defendant"). For purposes of ruling on the pending motion, all well-plead factual allegations in the Complaint are presumed true. (Doc. 1.)

Plaintiff is an Ohio corporation in the construction and excavating business. Defendant is an Arizona corporation that sells, rents, and services tractor, farm, and construction equipment and

parts. In February 2023, plaintiff purchased five Challenger MT865C machines (the "Machines") from defendant at $75,000 each for a total cost of $375,000.

Each Machine has an "hours meter," which shows the number of hours the Machine has been in use/service. Plaintiff and defendant had "numerous" conversations regarding the Machines, including the overall condition and the services hours associated with each Machine. Defendant also provided photographs of certain of the Machines' hours meters and represented that the services hours for all of the Machines were comparable. At the time plaintiff purchased the five Machines, the hours meter on each Machine showed that it had been in use for approximately 6,500 hours.

When the Machines were delivered, plaintiff learned that the service hours associated with each Machine did not correlate to their condition. Plaintiff obtained past service records for the Machines, which revealed that the actual service hours for each machine was between 2,500 and 11,000 hours higher than what the Machines' hours meters stated. Plaintiff also discovered latent defects with the Machines which required transmission and/or engine replacements. Additionally, plaintiff discovered that defendant has purchased the Machines from a third-party in 2022 for a total of $95,350.00—$279,650.00 less than plaintiff paid defendant for the Machines in February 2023. Consequently, plaintiff alleges that the actual value of the Machines is less than $100,000. Plaintiff alleges that defendant altered the hours meter of each Machine and misrepresented their use and condition to plaintiff.

Plaintiff brings this suit against defendant alleging four counts: fraud (Count I), fraudulent misrepresentation (Count II), breach of contract (Count III), and unjust enrichment (Count IV).

Defendant moves for this Court to dismiss plaintiff's complaint for lack of personal jurisdiction. Plaintiff opposes the motion.

Defendant has attached an affidavit to its motion, (Doc. 9-2), which sets forth various facts concerning defendant's activities—or lack thereof—in Ohio. For example, the affidavit avers that defendant "does not have any offices or real estate in Ohio" (Doc. 9-2 ¶ 6), besides its sale to plaintiff, defendant "has made only two sales to clients in Ohio in the past five (5) years," (*id.* ¶ 7), and defendant "has no employees that work or live in Ohio." (*Id.* ¶ 13.)

But nothing in defendant's affidavit disputes plaintiff's allegations that the parties had "numerous" communications about the Machines before plaintiff purchased them. In fact, defendant's affidavit acknowledges plural "communications concerning the bill of sale . . . made electronically (emails or texts or through phone calls)" (*id.* ¶ 10), and even a visit from plaintiff's associates who travelled to defendant's facility in Arizona to inspect the Machines. (*Id.* ¶ 16.) Nothing in the affidavit refutes plaintiff's allegations that defendant sent photographs of some of the Machines' hours meters and represented that all the Machines had comparable usage. Further, nothing in the affidavit refutes that defendant knew any harm caused by deceptive statements would be felt in Ohio. In fact, defendant's affidavit avers that defendant's "only performance obligation under the bill of sale was to ship the [M]achines to Ohio." (*Id.* ¶ 12.)

**STANDARD OF REVIEW**

Presented with a motion to dismiss for lack of personal jurisdiction and opposition thereto, "the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.

1991). The court has discretion to decide which method it will follow. *Id. "*However the court handles the motion, the plaintiff always bears the burden of establishing that jurisdiction exists." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). Where, as here, the parties have not conducted jurisdictional discovery and the Court has not held an evidentiary hearing, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen*, 935 F.2d at 1458. In this procedural posture, "the pleadings and affidavits . . . are received in a light most favorable to the plaintiff," and the Court "does not weigh the controverting assertions of the party seeking dismissal." *Id.* at 1459.[1]

Plaintiff's burden to establish a *prime facie* case of personal jurisdiction over defendant is "relatively slight." *Am. Greetings Corp.*, 839 F.2d at 1169. A *prima facie* showing is made by "establishing with reasonable particularity sufficient contacts between [defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (citation and internal quotation marks omitted). Under this standard, dismissal is "proper only if *all* the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (quoting *Theunissen*, 935 F.2d at 1458) (emphasis added by *Kerry Steel* court).

---

[1] Defendant is correct that when a defendant supports his motion to dismiss with affidavits, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." 935 F.2d at 1458. In this case, however, defendant's affidavit does not present any facts that dispute the complaint's allegations that establish personal jurisdiction. As such, even accepting as true the assertions in defendant's affidavit, they do not alter the Court's disposition of this case. *See Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) ("The only matters considered by the district court in this case were the amended complaint and an affidavit of [defendant] which contradicted nothing in the complaint but merely confirmed that the defendant is a California resident who has never practiced law in Ohio.").

**DISCUSSION**

"In dealing with a diversity case, [the court] look[s] to the law of the forum state to determine whether personal jurisdiction exists. The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (internal citations omitted). Defendant argues that neither requirement is met here.

    1.    **Ohio's Long-Arm Statute**

Plaintiff alleges that defendant is subject to Ohio's long-arm statute because it "transacted business" in Ohio when it contracted to supply the Machines to plaintiff. Section (A)(1) of Ohio's long-arm statute provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's" "[t]ransacting any business in this state[.]" Ohio Rev. Code § 2307.382(A)(1). Defendant counters that a single contract between an out-of-state party and an Ohio party does not amount to "transacting business" in Ohio.

Section (A)(1) of Ohio's long-arm statute is "very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting any business in Ohio." *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 160 (S.D. Ohio 2012). The Ohio Supreme Court has held that to "transact business" is "'to prosecute negotiations; to carry on business; [or] to have dealings.'" *Faurecia Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 705–06 (N.D. Ohio 2006) (quoting *Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (1990)); *see also Highway Auto Sales, Inc. v. Auto-Konig of Scottsdale, Inc.*, 943 F. Supp. 825, 829 (N.D. Ohio 1996) ("[I]f the phrase 'transacting business' is 'broader than the word contract,' 'transacting business' must logically subsume the narrower act of contracting."). "However, 'the mere existence of a contract or the mere solicitation of business in Ohio is insufficient to confer jurisdiction under section (A)(1).'"

*Dayton Superior Corp.*, 288 F.R.D. at 161 (citing *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x. 425, 431–32 (6th Cir. 2006)).

The Ohio Supreme Court has instructed that the interpretation of "transacting business" is "a case-specific inquiry." *Matrix Essentials, Inc. v. Harmon Stores, Inc.*, 205 F. Supp. 2d 779, 785 (N.D. Ohio 2001) (citing *U.S. Sprint Commc'ns Co. Ltd. P'ship v. Mr. K's Foods, Inc.*, 68 Ohio St. 3d 181, 185 (1994)). Two factors assist in the determination of "whether a non-resident defendant 'transacted business'" within the meaning of the statute. *Dayton Superior Corp.*, 288 F.R.D. at 161 (citing *Shaker Const. Grp., LLC v. Schilling*, 2008 WL 4346777, at *3 (S.D. Ohio Sept. 18, 2008)). "The first factor is whether the non-resident defendant initiated the business dealing." *Id*. "The second factor to be considered is whether the parties conducted their negotiations or discussions in Ohio or with terms affecting Ohio." *Id*. "If the non-resident reached out to the plaintiff in Ohio to create a business relationship," or "[i]f the parties negotiated in Ohio with provisions affecting Ohio, the non-resident transacted business in Ohio." *Id*.

Plaintiff alleges that defendant sent the contract to purchase the Machines to plaintiff in Ohio. While defendant indicates that plaintiff initiated the deal by reaching out to defendant, defendant does not dispute that it documented the purchase of the Machines on a bill of sale that it sent to plaintiff in Ohio. Plaintiff also alleges that the parties, each in their respective states, had "numerous" communications about the Machines before the purchase. Nothing in defendant's affidavit or motion refutes that the parties had numerous communications over email and text, and through phone calls. Irrespective of which party initiated those communications, defendant knew that it was required to ship the Machines to plaintiff in Ohio as a term of the agreement. Defendant does not refute this fact either. Given that plaintiff's burden is slight, the Court finds that these facts

support a finding that defendant transacted business in Ohio for purposes of the long-arm statute.[2] *See Speedeon Data, LLC v. Integrated Direct Mktg. LLC*, 2016 WL 557741, at *2 (N.D. Ohio Feb. 12, 2016) ("[C]ommunications concerning the negotiation of contracts is 'prosecuting negotiations' under Ohio law[.]"); *see also Dayton Superior Corp.*, 288 F.R.D. at 161 (explaining that there must be "some terms of the agreement that affect the state").

### 2. Due Process

Having determined that the Complaint's allegations establish personal jurisdiction over defendant under Ohio's long-arm statute, the Court turns to consider whether exercising jurisdiction over defendant in the forum comports with due process. The constitutional touchstone is whether the defendant purposefully established "minimum contacts" in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). These minimum contacts must be such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l*

---

[2] Even if this Court did not have personal jurisdiction over defendant under Ohio Rev. Code § 2307.382(A)(1), it would under Section (A)(2) and (A)(6). Section (A)(2) permits personal jurisdiction where a defendant "contract[s] to supply services or goods in [Ohio]." Because defendant contracted to and did ship the Machines to Ohio, section (A)(2) authorizes personal jurisdiction here. *See Highway Auto Sales*, 943 F. Supp. at 829 (finding Ohio's long arm-arm statute satisfied under subsection (A)(2) where the defendant contracted to supply a vehicle to the Ohio plaintiff, including delivering the vehicle from defendant's place of business in Arizona to Ohio). Further, section (A)(6) provides for personal jurisdiction over a defendant who "caus[es] tortious injury in [Ohio] to any person by an act outside [Ohio] committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in [Ohio]." Here, defendant's alleged misrepresentations and fraudulent tampering caused plaintiff injury in Ohio, which defendant would have reasonably expected because defendant knew it was contracting to sell the Machines to plaintiff in Ohio. *Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir. 2012) ("[D]istrict courts have found that fraudulent communications or misrepresentations directed at Ohio residents satisfy § 2307.382(A)(6)'s requirements.") (collecting cases).

*Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). In the Sixth Circuit, a three-part test further articulates these requirements:[3]

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Relying on Sixth Circuit case law, plaintiff argues that defendant is subject to personal jurisdiction in Ohio based on defendant's numerous deceptive conversations with plaintiff about the Machines, which defendant knew would cause plaintiff substantial harm in Ohio. This Court agrees.

### A. Purposeful Availment

"Purposeful availment occurs when a non-resident defendant takes action creating a 'substantial connection' with a forum such that she can 'reasonably anticipate being haled into court there.'" *Thomas v. Dykstra*, 309 F. Supp. 3d 480, 487 (N.D. Ohio 2018) (quoting *Neogen*, 282 F.3d at 889). This does not require that the "defendant must be physically present in the forum state." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996). However, "random," "fortuitous," or "attenuated" contacts are not sufficient. *Id*.

---

[3] "Personal jurisdiction comes in two flavors: 'general' jurisdiction, which depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant, and 'specific' jurisdiction, which exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Kerry Steel*, 106 F.3d at 149. Plaintiff does not dispute that the Court lacks general jurisdiction, but argues the Court has specific jurisdiction over defendant.

In the Sixth Circuit, a defendant's phone calls and other communications "into the forum, standing alone, may be sufficient to confer jurisdiction" where those communications "form the bases for the action." *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) (collecting cases). "[C]ases applying this standard usually involve deceptive communications, or communications giving rise to an intentional tort." *Thomas*, 309 F. Supp. 3d at 487 (citing *Neal*, 270 F.3d at 332–33 (finding purposeful availment where defendant's allegedly fraudulent communications surrounding a single transaction formed the basis of the action); *Schneider v. Hardesty*, 669 F.3d 693, 702–03 (6th Cir. 2012) (finding purposeful availment where two letters containing false and misleading information were sent to Ohio); and *Redhawk Glob., LLC v. World Projects Int'l*, 2012 WL 6032951, at *7 (S.D. Ohio 2012) (finding purposeful availment where the defendant's allegedly fraudulent misrepresentations formed the basis of the plaintiff's tort claims)). "The 'quality' of the contacts, as opposed to their number, is essential to determining whether minimum contacts exist sufficient to establish personal jurisdiction." *Matrix Essentials*, 205 F. Supp. 2d at 787 (citing *Calphalon*, 228 F.3d at 722).

Plaintiff alleges that the parties had "numerous conversations" regarding the condition of and service hours of the Machines. Plaintiff also alleges that defendant provided plaintiff photographs of certain Machines' hours meters and represented that the hours of all the Machines were comparable. Further, plaintiff claims it relied on defendant's representations in purchasing the Machines. Further, defendant knew the Machines would be delivered and used by plaintiff in Ohio. Only upon delivery of the Machines in Ohio did plaintiff allegedly learn that defendant had misrepresented the condition of the Machines and tampered with their hours meters. Plaintiff's suit centers around defendant's communications and whether they were purposefully deceptive. As in

*Neal*, defendant's allegedly deceptive communications "are the heart of the lawsuit—they were not merely incidental communications sent by the defendant into [Ohio]." *Neal*, 270 F.3d at 332.[4] Accordingly, these allegedly deceptive communications about the Machines are sufficient to establish purposeful availment.

### B. Whether Defendant's Activities Arise from Its Contacts with Ohio

Under the second prong of the *Southern Machine* test, "the Court must determine whether 'the operative facts of the controversy arise from the defendant's contacts with the state.'" *Shaker Const. Grp.*, 2008 WL 4346777, at *7 (citing *Calphalon*, 228 F.3d at 724). "This requirement is subject to a 'lenient standard.'" *Schneider*, 669 F.3d at 703 (citing *Bird v. Parsons*, 289 F.3d 865,

---

[4] Defendant's attempts to distinguish *Neal* are unpersuasive. First, defendant contends that plaintiff does not "qualify or quantify the content of the virtual communications between the parties." (Doc. 14, at 5.) But plaintiff has alleged there were "numerous conversations" including conversations that explicitly discussed the condition and use of the Machines and their hours meter readings—the heart of this dispute. Second, defendant points out that, unlike in *Neal*, plaintiff initiated the business relationship here. While this may be true, defendant does not refute that it initiated the allegedly fraudulent communications. Further, nothing in *Neal* suggests that a defendant can avoid jurisdiction in a foreign forum for their allegedly fraudulent communications knowingly directed at that forum just because the plaintiff opened the line of communication. Third, defendant argues that plaintiff has not alleged that the communications occurred over a "substantial period of time" like in *Neal*. While the *Neal* court did not quantify how long communications must occur to be considered "substantial," this Court is satisfied that plaintiff's allegations suggest the relationship here occurred over a sufficiently "substantial period of time." Nothing in the complaint or defendant's motion suggests that plaintiff bought the Machines in a single day or transaction. Rather, the parties communicated back and forth on "numerous occasions." Further, as defendant points out, plaintiff even took time to send personnel to inspect the Machines in person.

Defendant's reliance on other case law fares no better. The cases defendant cites are easily distinguishable because allegedly deceptive communications were not "the heart of the lawsuit" as in *Neal*, *Schneider*, and other more analogous Sixth Circuit case law. Here, defendant is subject to personal jurisdiction in Ohio because it allegedly directed fraudulent statements at an Ohio resident, knowing it would cause harm in Ohio. Defendant fails to cite any case law that suggests this type of purposeful misconduct is insufficient for purposes of asserting personal jurisdiction over a defendant.

10

875 (6th Cir. 2002)). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267.

Defendant argues that the gravamen of plaintiff's complaint and the facts central to its claims occurred in Arizona. Defendant argues that any alleged tampering with the hours meters occurred in Arizona and, likewise, any allegedly deceptive statements were made in Arizona as well. Defendant's argument misses the point.

Even accepting that any alleged tampering occurred in Arizona, the basis of plaintiff's complaint is the alleged misrepresentations by defendant about the Machines, upon which plaintiff agreed to purchase them. The dispute "arises from" those alleged misrepresentations. *See Schneider*, 669 F.3d at 703 ("[T]he dispute at issue unequivocally 'arises from' the two letters that [the defendant] wrote and [the plaintiff] received. Those letters, that [plaintiff] received, read, and relied upon in Ohio, form the basis for [the plaintiff's] allegations that [the defendant] furthered the fraud[.]); *Redhawk Glob., LLC*, 2012 WL 6032951, at *8 (explaining that the defendants "did not merely solicit business in the state via a telephone call or an email," but "engaged in allegedly fraudulent communications" that "form the bases for" the plaintiff's claims).

"Physical presence is not the touchstone of personal jurisdiction. . . . "[W]hen a foreign defendant purposefully directs communications into the forum that cause injury within the forum, and those communications form the 'heart' of the cause of action, personal jurisdiction may be present over that defendant without defendant's presence in the state." *Neal*, 270 F.3d at 333. Here, the "heart" of plaintiff's cause of action is defendant's allegedly deceptive statements, purposefully directed at Ohio where defendant knew they would cause harm. Accordingly, these alleged

11

misrepresentations are sufficient to establish that plaintiff's claims arise out of defendant's activities directed to Ohio and satisfy the second prong of the *Southern Machine* test.[5]

### C. Reasonableness

The third prong of the *Southern Machine* test requires the Court to "consider whether exercising personal jurisdiction over [defendant] would be reasonable, i.e., whether it would comport with 'traditional notions of fair play and substantial justice.'" *CompuServe*, 89 F.3d at 1267–68 (citations omitted). "[T]he determination of the reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors. A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987) (internal quotation marks and citation omitted). If the first two prongs of the *Southern Machine* test are met, an inference arises that the exercise of jurisdiction would be reasonable. *CompuServe*, 89 F.3d at 1268.

Defendant argues that it would be unreasonable for the Court to exercise jurisdiction over it because it would face a significant burden litigating this case in an Ohio forum. Defendant points to its lack of physical presence in Ohio and the location of its witnesses and business operations in

---

[5] Defendant's reliance on *Costaras v. NBC Universal, Inc.*, 409 F. Supp. 2d 897 (N.D. Ohio 2005) is misplaced. In *Costaras*, the plaintiff alleged breach of an oral agreement regarding the development of a television show. *Id.* at 902–03. Although plaintiffs were Ohio residents, plaintiffs themselves alleged that "all [their] ideas were presented to [defendants] in California. *Id.* at 903. Plainly, *Costaras* did not address allegedly deceptive statements made in California but purposefully directed to cause harm in Ohio.

Arizona. Plaintiff argues that modern transportation and communication mitigates any burden defendant faces. Plaintiff further argues that the state of Ohio has a strong interest in adjudicating a dispute of a resident corporation, and plaintiff also has a strong interest in obtaining relief in this matter. Finally, plaintiff argues that no other state has an interest in litigating this dispute.

The Court recognizes that defendant would be burdened by litigating this case in Ohio. "However, 'modern transportation and communication' sufficiently ease this burden." *Ardent Techs. Inc. v. Advent Servs LLC*, 2023 WL 5588547, at *8 (S.D. Ohio Aug. 29, 2023) (quoting *CompuServe*, 89 F.3d at 1262). While defendant's documents and witnesses may be in Arizona, the Machines—the largest piece of evidence—are in Ohio. Further, defendant's "burden appears to be no greater than the burden would be on plaintiff to litigate in" an Arizona court. *Nationwide Mut. Ins. Co. v. Curry*, 1997 WL 165374, at *6 (S.D. Ohio Jan. 7, 1997). "These facts undercut the argument that the burden of traveling is significant enough to transform this into the 'unusual case' where the exercise of jurisdiction would be so unreasonable as to overcome the inference of reasonableness that arises when the first two prongs of the *Southern Machine* test are met." *Kroger Specialty Pharmacy FL 2, LLC v. Bessen*, 2024 WL 665572, at *6 (S.D. Ohio Feb. 16, 2024) (citation omitted).

With respect to the remaining considerations, "this case clearly implicates [plaintiff's] business interests and Ohio possesses an undeniable stake in protecting the business interests of its citizens." *Ardent Techs.*, 2023 WL 5588547, at *8. *See also CompuServe*, 89 F.3d at 1268 ("Ohio has a strong interest in resolving a dispute involving an Ohio company[.]"). Finally, defendant does

13

not argue, and the Court does not find, that any other state has an interest in this litigation that would change the outcome.[6]

Considering the pleadings in a light most favorable to plaintiff, the Court finds that "there is a substantial enough connection between [defendant] and Ohio to make it reasonable for an Ohio court to assert personal jurisdiction over" it. *CompuServe*, 89 F.3d at 1268.

### **CONCLUSION**

For the foregoing reasons, defendant's Motion to Dismiss is denied.

IT IS SO ORDERED.

                                              /s/ Patricia A. Gaughan
                                              PATRICIA A. GAUGHAN
Dated: 6/18/24                               United States District Judge

---

[6] Citing *World-Wide Volkswagen Corp. v. Woodson*, defendant argues that, irrespective of the other "fair play and substantial justice" considerations, the exercise of jurisdiction is improper here because "the Due Process Clause does not contemplate that a state may make binding a judgment *in personam* against a corporate defendant with which the State has no contacts, ties, or relations." 444 U.S. 286, 292 (1980) (alterations and internal quotations omitted). In *World-Wide Volkswagen*, the Court found personal jurisdiction lacking because the "[p]etitioners carr[ied] on no activity whatsoever in" the forum state. *Id*. at 295. As discussed throughout this Opinion, that is not the case here. Defendant communicated with plaintiff—an Ohio company—about the purchase of the Machines, allegedly made fraudulent misrepresentations about the condition of the Machines, which caused plaintiff to enter into an agreement to purchase them, and then shipped the allegedly tampered with Machines to plaintiff in Ohio.

14